Good morning. May it please the Court, Bernard Brody for Darren Lasley. This appeal concerns just one issue, and that's whether the District Court erred in refusing to give his requested jury instruction on entrapment. We believe that the evidence was clearly sufficient to show, number one, that Mr. Lasley was induced to commit this offense, and number two, that he lacked the predisposition to commit this offense. The initial burden of proof is on the defendant. To warrant the entrapment instruction, Mr. Lasley is only required to establish that there's some evidence of inducement. The case law says more than a scintilla. That's it. It's a very, very low burden. We believe that burden was met. The government, in its brief, says the record is devoid of any evidence of inducement, and we disagree. So, first, what is inducement? Well, inducement can include pressure, persuasion, fraudulent representations. We believe all of those things are evident in this case. It doesn't have to be overly egregious. It can be subtle. Something that causes the person to agree to commit the offense. You know, the government, in their brief, talks about implanting the criminal intent in the person's mind, and that's a stretch. That's not really what's required. All that's required is them providing persuasion, providing the pressure necessary to push this person to agree to commit the offense. And so, in this Court's decision in U.S. v. Myers, the Court listed four factors for the Court to consider. Now, these factors aren't exhaustive, nor are they even required. And I will caution the Court, the Myers case is actually completely different than this case. The Myers case, the defendant got the entrapment instruction. The jury convicted him anyway, and he argued on appeal that his conviction should be overturned because he was entrapped as a matter of law. So a lot of the long quotes the government cites in their brief to Myers are actually taken out of context, because that was a completely different standard that that defendant was being held to. We are on a much lower standard here. All we're asking is that the District Court should have given the jury instruction. So what are these factors, though? First factor in Myers is, what was the effect of the photos sent by the government? Well, in this case, the detective used a photograph of a 24-year-old woman, and he was using it on a website, Craigslist, that is used primarily, almost exclusively, by adults. So he knows he's going to encounter people that aren't looking for minors. And then during the conversation, he says, I'm 14. But that's confusing to somebody, because he's looking at a picture of a 24-year-old. It's sending mixed signals. It's ambiguous. And what it's doing is it's making it more likely that somebody who's not looking for minors, who never had the intent to meet a minor, to continue chatting with him, because he's confused by all of this. And that's exactly what happened in this case. Because remember, the inducement doesn't have to be on paper. The government wants to say, look at the words in the communications. That's all. But look outside that. Look at the tactics that the detective is using. Because that's really what the inquiry is. The inquiry is, are these tactics that the detective is using inducing this person to commit the offense? So when you look at that first factor in Myers, the photo that was used by the government, absolutely that induces him. I'm not going to say that in and of itself that induces him, but that's one of the things that is helping to induce him. The most glaring evidence of a... Again, counsel, could you explain why? Could you explain your confusion point? Yes. So you're on... The information that he has is that this is a 14-year-old. What's the confusion there? Or what's the possibility of confusion? The confusion is he's online, where people misrepresent all these different things about who they are. He's looking at a picture of a 24-year-old. He's communicating with this person on a platform where there aren't minors. The evidence was that Mr. Lasley had responded to 600 other ads on Craigslist and never once encountered a minor. So yeah, that's going to be confusing just because this person says they're 14. And remember, because now we'll spill over into one... I thought you were making a different point. I thought you were making... You're saying he might have thought she wasn't really 14, the decoy? I thought you were making a different point, which was that he wouldn't have been attracted to a photo of a 14-year-old. I am making both points, Judge. And that by showing the adult woman, it caused him to proceed in a way that he wouldn't have if it was a picture of a child. That is exactly the point, Judge. And because if they're using a picture of a little 14-year-old girl, he would be much less inclined to continue chatting once he's being told this is 14, this person's 14. But when he sees this picture of a 24-year-old... Remember, Mr. Lasley was only 27 at the time. This is somebody who's a peer of his that he's looking at in this photograph. And that is going to have an effect on him. Now maybe not be... If that's the only thing we have, the only inducement we have, I would say we might not be able to meet our burden. But there's even much more glaring examples of inducement. Remember, this offense, in order to commit this offense, Mr. Lasley has to suggest that they engage in a sexual act that's in violation of Missouri law. If he doesn't suggest that, there is no crime. And the detective made 12 attempts in this case to get him to suggest something sexual that was in violation of the law. Every time he asked him, Mr. Lasley would just say, well, we'll just see what happens. We'll just take it slow. When we meet, we'll figure things out. But that wasn't good enough for the detective. He had to keep pushing the buttons, putting the pressure on him, saying things like, I'm going to need to know your expectations. I'm up for anything. What do you want to do? Then Mr. Lasley mentions they could play strip poker. And the detective says, strip poker? That's it? Because that's not good enough. That's not a crime yet. So he keeps putting the pressure on him. How far do you want to go? I don't like surprises. I like looking forward to stuff. Darren's still not saying anything. Finally, in the 11th attempt to try to get Darren to say something, Darren says, oh my God. Okay. And you can feel the inducement in his words. And then he says, well, maybe the first time we'll just chill and mess around a little. But that's not good enough either. Then the detective says, I need to know your definition of messing around. And that's when the digital penetration, which became the subject, the actual crime in this indictment. So that is the most glaring evidence of inducement. I don't see how you could argue that Darren would have said those things in the chat without the pressure that was being put on him by the detective. And lastly, the other factor in Myers was the girl being presented as sexually precocious. Well, this was a girl who said that she was a wild child who likes to drink her mom's wine, sneak out of the house. Right off the bat, she says she was attracted to older men and told Mr. Lassley, oh my God, you're so cute. Plus, she said she had sex with her mom's 35-year-old friend. Even in the government's brief, it says even if it could be said that the decoy was painted as sexually precocious, it was only to an extremely minor degree. What does that mean? Either she's sexually precocious or she's not. And if she is, then that's the factor in Myers. I'll save my remaining time. Well, we'll give you a little extra time. Why don't you address predisposition? Because that's the government's argument, of course, that even if there's enough on inducement. Right. So what the government is basically arguing is that if there's evidence of predisposition, then he's not entitled to the instruction. But that's not the law. The law is that the evidence of predisposition has to be beyond a reasonable doubt for him not to be entitled to the jury instruction. And it's confusing because they take a lot of this language from the Myers case and from these other cases. What case? I don't know how a judge would decide that in a pretrial ruling. What case says that? Young. Young? U.S. v. Young, 613 F3D, 747. It says, once government inducement is established by the defendant with more than a scintilla of evidence, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense. So that would be a jury issue in your view? Correct. So there could be some evidence of predisposition. There could be considerable evidence of predisposition. But it's up to the jury to weigh that evidence. The only way the jury instruction is denied is if the proof of predisposition is beyond a reasonable doubt so that no jury could ever reasonably conclude otherwise. And that's, I think, the biggest point here because we have evidence from his computer, his cell phone, from his tablet that he had never communicated with minors. They had hundreds and hundreds of communications that he had with his online dating platforms. Not one of them involved a minor. Plus, there was evidence presented of, you know, character evidence, people that knew him for a long period of time, and nothing suggested that he had this predisposition. The only evidence of predisposition was the government's contention that he didn't hesitate, that he just willingly committed this crime without much inducement, which we disagree with. What the district court said, this was the district court's words, the district court said that Mr. Lassley had an opportunity to abate, and he did not, and that he, quote, knew it was wrong, but he kept going. But what does that have to do with predisposition? I mean, no one abates when they get arrested in these cases. Everybody keeps going. It's actually a prerequisite that they commit the crime for them to even have the affirmative defense of entrapment. So in all of these cases, even when they're entrapped, they keep going. They don't abate, and they commit the crime, and that's exactly what Mr. Lassley did, and that's the only reason why the district court found that he was predisposed. It's because he committed the crime. All right. Thank you for your argument. Thank you, Judge. Mr. Coppe, we'll hear from you. Thank you. May it please the Court. As far as the standard is concerned about scintilla and whatnot, I think that, and this may be a fault on my part, I think that was decided by the Supreme Court in Matthews, 1988, and we're not talking about more than a mere scintilla. The rule, and I'll quote, defendant is entitled to an instruction on any recognized offense, including entrapment, where there exists evidence sufficient for a reasonable jury to find in his favor. And that's the standard that we quote in our brief. That's the standard we use here. So to deny the instruction, the judge has to say, as a matter of law, no reasonable jury could find that he was induced. Correct. And in this case … Entrapped, I guess. Yes, entrapped. Well, right, but the primary concern here is, where is the government's inducement? And this doesn't purport to be an all-encompassing definition, but the Eighth Circuit case law, which I cited, page 32, and I'm going to walk through it slowly, can include pressure, assurances that the person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas on need, sympathy, or friendship. Well, when you look at this in total, and you try to juxtapose it on a situation where you have this decoy situation, where someone is purporting, law enforcement is purporting to be a 14-year-old, I don't know what this really would look like. It's more than simply giving someone the opportunity to commit the crime. Under the case law, I think, and we would never do this, but I think we could put a 14-year-old in a bikini on a street with a sign that says, do you want to have sex with me? If so, meet me at this motel. And if you show up, there's no inducement here. You're That's why I have a little problem, and I'm going to get to this in a second, with What about the fraudulent portrayal of the victim using a 24-year-old photo? Well, that's an interesting question, because as I read this four-factor test, what you're looking at is a situation where you want to entice the individual by painting this person as somebody who's readily available and young. He's turned it around. He's flipped it. He's saying, oh, by virtue of the fact that we used a 24-year-old who arguably could be 14, that shows that he really wasn't interested. But there's never been Why would you, why would they do that? Well, they do that because I guess their policies, their policies don't allow them to use, like, actual photos of 14-year-olds Can't they create a digital image of a You know, you could have. I've seen them on, I've seen those now where they look Go ahead. That's just a side point. But I mean, no, but I think, Judge, the reason is that the case law basically is saying if you are sending a picture of someone who looks promiscuous and young, that has a tendency to entice someone. He's twisting it around and saying, oh, no, that shows I wasn't interested at all. Well, I'm not sure that's twisting it. It's a picture of Well, but he's turning it on his head. It's a picture of a 24-year-old person. He's turning it on his head. I mean, he's basically saying, making an argument that does not go to entrapment. He's basically saying he had, he didn't necessarily believe that this person was 14. That is often what's Well, that was his first argument. Right. We often He accepted the second argument, which was that We often see that in these cases Now, wait a minute, wait a minute. The argument, I think, is that there was inducement because he was tempted to chat with a woman who looked like an adult, who was an adult in the picture. Right. Even though he obviously believes, as you look at these chats, he never had a single doubt that this was a 14-year-old. He bought it hook, line, and sinker. So any argument that he was confused, oh, no. There was nothing confusing about this guy's behavior. Basically, what he thought is maybe he wasn't initially looking for a 14-year-old. Maybe he hadn't previously had any experience. But he stumbles across this, and he readily is like, whoa. So the argument that he is pressured, now, I think both sides set out in their brief the back and forth. And if anybody there can find anything even remotely pressure, I mean, basically what we did is we were working from something, and that was, I've got this at page three of my brief. It's something called the Internet Crimes Against Children, the ICAC Guidelines and Standards. And what it does is it operates, essentially, on this four-factor test. Now, I'm going to talk about that a little bit more. But so basically, what they try their best to do, and Detective Evans here, or Deputy Evans, what we do is we make sure they make the contact first, which happened here. We make sure that we don't suggest sexual acts. We don't suggest meetings. We all leave that to him. They picked a picture, again, that they thought, well, we don't want it too suggestive. So we've got an older person. They're not dressed provocatively. Could be a Facebook page picture. It could be a LinkedIn picture. Not designed to get the guy all worked up. That was the whole point. And we don't suggest sexual activities. We let him do it. And so when you look at these. Well, you say I'm a wild child. Well, wild child. In the context of a website that often is designed to meet sexual partners. Right. I mean, there has to be something that suggests to him that she might be interested in this. But you let him take it there. All right. For example, she made a reference to, well, we could play cards. And that's fairly innocent. But what does he turn it into? Strip poker. We didn't say that. All right. But what I'm saying is I don't know that that particularly is as significant as the defendant makes it out to be. I'll give you an example. And I didn't mean to blindside my opponent here. But like 10 minutes ago, I found this case. And I think the court is, two of the judges are familiar with it. The Joiner case, which was decided in July of this year. And Joiner is a case that I think Judge Shepard wrote. And in Joiner, you had a situation where, in Joiner, sorry, I don't believe I have time to read it. But in Joiner, you had a situation where the solicitation was for a prostitution-based website. So there was no question asked except that it said that the person was 19. But when he contacted the person, was immediately told that it was, that the person was 15 years old. And so that's a situation where clearly the government, you know, suggested that sex could, it was up front. And the court in that case held there was no need for an entrapment instruction. And I think correctly so. But that's a case where we put it up front, hey, you know, this is about sex. It listed the services you could obtain on that website. I don't think there would have been anything wrong if we had done that, but we didn't do it. So in this case, like I said, if you use the four-factor test, and I know I point in my brief, I think this is unique. It was, it came out of the Myers case. Judge Wolman was the one who came up with it. And he didn't cite any case law. I don't see it in any other jurisdiction. I think that the court's focus needs to be on what really looks to be entrapment in terms of inducement, in other words, pressure, appeals to sympathy, all of these things, none of which were present here, absolutely none. Merely asking someone, hey, I'm 14, would you like to have, you know, sex with me? That's not entrapment unless I'm somehow causing you to do something that you wouldn't otherwise have done. I'm merely providing an opportunity for you to do that. And so when we say we don't think there is any evidence of entrapment, that's, I mean, we mean exactly that. And the idea that he was being pressured, no. We were being very cautious. We were making sure that he was the one, because we were playing by the rules the court has set up. We were playing by those rules even if maybe they aren't the best indicator of whether we have entrapment. Well, what about the point that that Myers case was about entrapment as a matter of law? There are several cases. Because you might be right in some cases that there was no entrapment, but it's a jury issue. Well, right. And, you know, Matthew says it's a question of sufficiency. Generally speaking, yes. Generally a jury question. Myers actually talks about that. Myers says, well, since the judge gave the instruction, you know, the defense argues we don't have to look at this. But this says, no, we do have to look at this. And basically, if you're reading between the lines in Myers, there seems to be suggesting they didn't really need to give the instruction, because they don't find inducement in that case. District court judge did. District court obviously gave the instruction. But most of the cases that we do cite not only do involve the denial of an entrapment instruction, including the Joiner case that came out in July, but in our view, and we point this out in our brief, and I see my time is done, but I think in our brief there was actually in each of those cases more evidence of entrapment using those factors than we have here. Do you want to say anything about predisposition for one minute? Right. Our argument here is, and the case law suggests that, that if you have a situation as we have here where you don't have any evidence, where all you have is the individual, you know, he's the one that kept sexualizing this conversation, if you don't have any inducement, then you necessarily, it's the other side of the coin, you necessarily have predisposition, because why else would the person have committed the crime if they weren't, you know, if there was no evidence of inducement?  Well, you're using Mr. Brody, so that means anybody who commits the crime is predisposed and there's never an entrapment instruction. Well, if you haven't been induced, right, right. If you haven't been induced by the government, if you could have gotten, yes. I thought you were arguing in your brief that even if there was enough inducement here to justify an instruction, the instruction was nonetheless properly denied because he was predisposed. Isn't that correct? I don't, yeah, no, we don't, oftentimes I do suggest, you know, even if, but I think in this case, because it is so clear that there is, like, zero evidence of inducement, I'm just saying because there was no inducement, he's necessarily, we've necessarily shown that he was predisposed. No, I'm not. Oh, so you're saying it all comes down to the inducement. It all comes down to the, it all comes down to the inducement. If there's enough inducement to warrant instruction, then we're not, all right. And I'm saying that there's, yeah, and I'm saying that there's, again, defense counsel arguing that there's pressure. Look in the, look in the records, see if you see any. I don't believe there's any of that. Thank you. All right, thank you for your argument. We'll give you two minutes for rebuttal, Mr. Brody. Thank you, Judge. Your Honor, actually, if you look at volume two of the trial transcript, pages 138 and 139, it uses images of minors. The detective agreed with that at trial. He just chose not to. So the question is, why not? Why are they using a picture of a 24-year-old woman when the ICAG protocols allow them to use a 14-year-old? And here's the reason. They don't want to be too convincing because that makes their job a lot harder. It is a lot easier to go on to Craigslist, which is, frankly, probably the bottom rung of online dating, and send all these mixed signals, and get people who aren't, not only aren't looking for minors, but aren't even used to encountering minors, and see if they can't just talk them into doing this. And that's what happened here. So... What about the fact that all these other people who they tried it on called Craigslist and complained? Your guy just went right ahead and... And that goes to the evidence of his depression, his isolation, his loneliness, how desperate he was. It all came in at trial. And if you find somebody who's lonely, who's desperate enough, you'll get them to agree to do something they wouldn't ordinarily do. And that's the point of this case. You're right. Mr. Lassley is different than a lot of these other people. And that's why he was induced to commit this crime. Counsel, the only thing, the definitive thing, or the distinctive fact here, is the age. And the only information that the appellant had about age was the definitive statement that this is a 14-year-old. And so I'm having some trouble, even though the photograph is of an older person, if the only information that he has as to age is that data that he was given, and that's 14, how do you make the leap to confusion? Because as Judge Colton suggested, this picture of a 24-year-old, not only a 24-year-old, but an attractive one, it's somebody who he's going to be attracted to, somebody that's going to keep stringing him along, keep him in the communication as opposed to walking away. If that was a real 14-year-old girl that looked 14 years old in that picture, much more likely he would have walked away. And remember, this is entrapment. So he committed the crime. He believed he eventually was talking to a 14-year-old. He believed he was going to meet a 14-year-old. But that doesn't negate the entrapment defense. All right. Thank you for your argument. Thank you very much. Thank you both, counsel. The case is submitted and the court will file a decision in due course. Thank you.